SARAH HARLOW *vs.* FITCHBURG RAILROAD COMPANY.

The provision of *St.* 1851, *c.* 147, § 5, that in any action " brought by a passenger against any railroad corporation, steamboat proprietor or other common carrier," the plaintiff, after proof of the bailment of his trunk to the defendants, and of its loss " by the fault of such carrier, or of the agents of such carrier," shall be allowed to put in evidence a descriptive list of its contents, sworn to by himself, applies to the case of the loss of a trunk left by the passenger with the baggage master of a railroad corporation, after arriving at his place of destination.

ACTION OF TORT against a railroad corporation for the loss of a trunk entrusted to them as common carriers.

At the trial in the superior court of Suffolk at January term 1856, before *Abbott, J.,* it appeared that the defendants were the owners of a railroad in this commonwealth, and common carriers of passengers thereon; that the plaintiff, having purchased a ticket of them, was a passenger in their cars from Boston to Waltham, with her trunk; that upon her arrival at Waltham she asked the conductor of the train to take charge of her bag-

gage, saying that she would send for it as soon as she had secured a boarding-place; to which the conductor assented, and directed the defendants' baggage master to take charge of it, which he did; but a day or two after, it was stolen from their custody, and on the next day, when the plaintiff sent for it, could not be found, and had not been found since.

The plaintiff then offered a schedule of the contents of the trunk, supported by her own oath, which was objected to by the defendants, but admitted by the court. The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*H. C. Hutchins*, for the defendants. This evidence was inadmissible, unless allowed by the *St.* of 1851, c. 147, § 5. *Snow* v. *Eastern Railroad*, 12 Met. 44. The plaintiff had arrived at her journey's end, and received her trunk, and deposited it with the baggage master; the relation of the defendants to the plaintiff as common carriers had ceased, and that of warehousemen had supervened. *Thomas* v. *Boston & Providence Railroad*, 10 Met. 472. *Norway Plains Co.* v. *Boston & Maine Railroad*, 1 Gray, 263. The *St.* of 1851, c. 147, § 5, does not extend to actions against warehousemen; but applies only " whenever an action shall be brought by a passenger against any railroad corporation, steamboat proprietor or other common carrier," for the loss of baggage " by the fault of such carrier, or of the agents of such carrier " — showing that the statute is limited to the relation of common carrier and passenger. If it is only necessary to show that a plaintiff has been a passenger, in order to make his testimony admissible under this statute, when does the rule cease to be applicable? The common carrier is a public servant, to whom the plaintiff must entrust his baggage when he travels; but a bailment, after the arrival, is the traveller's own voluntary act.

*J. M. Bell*, for the plaintiff.

SHAW, C. J. The main question made at the trial, and the only one now argued here is, whether the case was within the *St.* of 1851, c. 147, respecting the carrying of effects of passengers by railroad corporations, steamboat proprietors and other common carriers, and especially section 5 of said statute

which provides, that after proof of the bailment of any trunk, &c., and the subsequent loss thereof by such carrier, the plaintiff may put in evidence his own schedule or written descriptive statement of the contents of such trunk. The argument was, that because the transit of the passenger and that of her baggage had terminated, the relation of passenger and common carrier between the parties had ceased, and therefore the cause was not within this statute.

We lay no great stress on the facts, that on arrival of the train at Waltham the plaintiff requested the conductor to take charge of her luggage until she could send for it; that the conductor consented to do so, and directed the baggage master of the defendants to take charge of it. But this evidence was competent, and has a tendency to show that the plaintiff did not at that time take possession of her trunk, or intend to do so, but intended to leave it temporarily at the depot; that the proper officers and servants of the company had notice of it, and did in fact take the trunk to the baggage room, the proper place of deposit for that purpose. What we mean is, that we do not consider that this request to the conductor and baggage master, and their assent to it, were the basis of the obligation of the company.

We are then to inquire what was the duty of the defendant company, as carriers of passengers; and what is the ground on which it rests. The purchase of a ticket must be regarded, in law, as compensation for all the duties which the carriers undertake to perform, in respect to the person of the passenger, and in respect to the care and transportation of his baggage. When therefore the baggage of a passenger is placed in their custody, to be carried with the passenger, they are bailees for hire, paid agents and depositaries, and their responsibility is to be tested accordingly. Now, whether a common carrier of passengers, in respect to the baggage of a passenger, is like a common carrier of merchandise, liable for all losses except those caused by an act of God or a public enemy, and whether or not that larger responsibility terminates when the transit ends and the goods are unladen — which it is not necessary to decide — all responsi

bility of the carriers does not then cease. They, the same company, in virtue of the same duty, and upon the same pecuniary consideration, are bound, both by the rules of the common law, as a necessary incident to their undertaking, and by the obligations imposed upon them by the *St.* of 1851, to keep the property safely, and deliver it to the owner on request. Then, as bailees for hire, they are bound to use due and reasonable care and diligence in keeping the property, such reasonable care and diligence as the nature of the property may require to preserve it from loss and damage, such as a person of common prudence would exercise in the care and preservation of his own property of a similar kind in like circumstances.

And the court are of opinion that this was a case within the statute, so as to make the evidence of a descriptive list, sworn to by the plaintiff, competent evidence. The statute makes no distinction, if there be one, between the larger liability of carriers whilst the baggage is *in transitu* and before they are unladen from the cars, and that more limited duty which devolves on them as bailees for hire, after it is received at the depot. The provision is, that whenever an action shall be brought by a passenger against any railroad corporation, &c., to recover damage for any trunk, &c. lost or damaged, and the plaintiff shall have made proof of the bailment, &c., and the loss of the same, by the fault of such carrier or his agents, the plaintiff shall be allowed to put in evidence a descriptive list sworn to by him, &c.

Whatever may be the nature and extent of the duties of carriers, whether they be liable for all losses, or only for such as proceed from negligence and carelessness of them or their agents, or from failure in the performance of all duties incumbent on all bailees for hire, the relation of passenger and carrier, in regard to baggage, continues until the carriers have performed their whole duty. The same reasons, therefore, for admitting the sworn descriptive list, to prove the contents of a lost trunk, apply to all cases in which the company may be responsible.

*Exceptions overruled.*